UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAMES LEWIS, 99-B-1428

       Petitioner,

    -v-                                    03-CV-0755(MAT)
                                                  **ORDER**
JOHN BURGE, Superintendent of
Auburn Correctional Facility

       Respondent.

---

**I. Introduction**

Petitioner James Lewis ("Lewis" or "petitioner") has filed a *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Yates County Court on one count of Criminal Possession of a Forged Instrument in the Second Degree, a class D felony.

**II. Factual and Procedural History**

Following a jury trial in Yates County Court before Judge W. Patrick Falvey, Lewis was convicted of Criminal Possession of a Forged Instrument in the Second Degree (N.Y. Penal Law § 170.25) and Petit Larceny (N.Y. Penal Law § 155.25). On June 1, 1999, a hearing was held on the issue of whether to sentence the petitioner as a persistent felony offender. The trial court found that Lewis was a persistent felony offender and sentenced him to a term of imprisonment of fifteen years to life on the forged instrument

count and one year on the petit larceny count to run concurrently to one another. Sentencing Tr., R. 702.[1]

The conviction arises out of an incident that took place on April 18, 1998, at the P&C Grocery Store in Penn Yan, New York. James Lewis presented a check drawn by John Staples to a cashier, Connie Benson ("Benson") to be cashed. The check was made out to and apparently endorsed by Dana Bratcher. Along with the check, Lewis also presented an identification card with Dana Bratcher's name on it. Shortly before the petitioner approached the cashier, a woman had presented Benson with a check, also from John Staples, made out to Tracy Arnold. Finding it unusual that two checks would be presented from the same unfamiliar endorser, Benson took the petitioner's check back to her manager, Robert Uhle ("Uhle"). Uhle turned the in-store security camera in the direction of the counter, onto the petitioner. Uhle approved the check and sent Benson back to the counter, who then cashed the check for Lewis.

Petitioner was arraigned in Yates County Court on June 25, 1998. The prosecution served two notices pursuant to Criminal Procedure Law ("C.P.L.") § 710.30.[2] The first notice pertained

---

[1] The state court records submitted by the respondent are comprised of three volumes and are Bates-stamped. They will be denoted herein as "R.___".

[2] "Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, or (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." C.P.L. § 710.30.

only to the prosecution intent to introduce evidence of the petitioner's statements made to the police. R. 96. The second contained a notice of intent to introduce evidence of another statement by the petitioner, and the identification testimony by Uhle, Ken Wilson, Steve Baker, and Mike Iacucci. R. 95. On November 5, 1998, the Yates County Court held a series of pre-trial hearings, including a Wade hearing to determine whether the identification testimony referred to in the second § 710.30 notice was admissible.[3] Hearings Tr., R. 274-316. The trial court ruled that the identification testimony of all four persons referred to in the notice was admissible. Decision and Order, 11/20/98, R. 162. All four of the witnesses (Ule, ken Wilson, Steve Baker and Mike Iacucci) testified at Lewis's trial. Benson, the clerk who cashed the petitioner's check, also testified, but was not previously named in either notice.

In June 1999, petitioner moved the Yates County Court to set aside the judgment of sentence pursuant to C.P.L. § 440.20, and brought a motion for *vacatur* under C.P.L. § 440.10 shortly thereafter. R. 1-19, 22-35. Both were denied by the state court in a decision dated December 17, 1999. R. 38-40. Leave to appeal the decision was denied by the Appellate Division, Fourth Department, on May 3, 2000. R. 49. On direct appeal, the Fourth Department unanimously affirmed Lewis's conviction. People v.

---

[3] United States v. Wade, 388 U.S. 218 (1967)(due process clause precludes states from obtaining evidence through unduly suggestive identification procedures).

Lewis, 292 A.D.2d 814 (4th Dept.), lv. denied 98 N.Y.2d 677 (2002). He next brought a motion for *writ of error coram nobis* to the Fourth Department alleging ineffective assistance of appellate counsel. R. 761-780. This motion was denied as well. People v. Lewis, 306 A.D.2d 957 (4th Dept.), lv. denied 100 N.Y.2d 622 (2003).

Lewis brought a subsequent C.P.L. § 440 motion in February, 2004, which was denied by the Yates County Court. R. 795-805, 808-809. Leave to appeal was again denied by the Fourth Department. R. 815. Lewis petitioned this Court for habeas corpus relief under 28 U.S.C. § 2245 (Dkt. #1), which was stayed pending the outcome of Lewis's § 440 motion in state court. (Dkt. #16).[4] In the instant habeas petition, Lewis raises five claims: 1) petitioner did not receive proper notice of the prosecution's intent to call an identification witness; 2) ineffective assistance of trial counsel; 3) ineffective assistance of appellate counsel; 4) insufficient evidence to support the conviction; and 5) the sentence as a persistent felony offender was in violation of the rule of Apprendi v. New Jersey. (Dkt. #14). Respondent has submitted an Answer and Memorandum of Law arguing for the denial of the writ on procedural grounds as well as on the merits. (Dkt. #18, 19).

For the reasons that follow, the petition is dismissed.

---

[4] This Court also ordered the petitioner's Second Amended Petition (Dkt. #14) to be the operative petition for habeas corpus relief. (Dkt. #15). Citations to "Pet." will refer to the Second Amended Petition.

**III. Discussion**

    **A.    Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1),(2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

    **B.    Exhaustion Requirement**

An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). Based on a review of the record, the Court concludes that Lewis has properly exhausted the instant claims in state court.

**C. Merits of the Petition**

**1. Improper Notice of Intent to Call Witness**

Petitioner claims that the prosecution failed to give him notice of its intent to call Benson, the cashier as an identification witness, thereby violating his right to due process. Pet. ¶ 22(A). (Dkt. #14). In support of this claim, Lewis cites N.Y. C.P.L. § 240.20, which governs the prosecution's general duties with respect to discovery. Section 240.20 does not specifically mention identification testimony, nor does it refer to the statute that does. Lewis presumably intended to invoke C.P.L. § 710.30, which governs the notification requirements regarding identification testimony because Benson was not named in either of the prosecution's 710.30 notices.

It should first be noted that Benson was not an identification witness, and thus the prosecution was not required to list her in the 710.30 notices. Benson did not identify the petitioner in court, and in fact testified that she was not able to identify the petitioner in a photo array. R. 521. Benson did view a tape of the incident in the courtroom and identified the man in the video as the same person who had given her the check to cash. R. 511. Because her testimony did not involve an identification of Lewis as the perpetrator, it does not fall within the scope of C.P.L. § 710.30. In any event, the admission of any alleged identification testimony without following the statutory requirements of § 710.30 does not raise an issue cognizable on habeas review. Brown v.

Harris, 666 F.2d 782, 785 (2d Cir. 1981) (The notice requirements of C.P.L. § 710.30 are not "constitutionally mandated"); Little v. Greiner, 199 WL 1390249 (W.D.N.Y. 1999); De La Cruz v. Warden, 1998 WL 901724 (S.D.N.Y. 1998). This claim is therefore denied.

### 2. Ineffective Trial Counsel

Lewis also claims that his trial attorney was ineffective because he failed to object to the introduction of Benson's testimony. Pet. ¶ 22(B). To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Id., and may not second-guess defense counsel's strategy. Id. at 690.

The introduction of Benson's testimony was neither improper under state law nor an error implicating the petitioner's constitutional rights. Although the Second Circuit recognizes that there are "marginal" situations in which the application of § 710.30 is not clear, state case law supports the contention that the notice requirement does not apply to Benson's testimony. Brown v. Harris, 666 F.2d 782, 785 at n.4 (2d Cir. 1981); see, e.g. People v. Heath, 219A.D.2d 804 (4th Dept.), lv. denied 87 N.Y.2d 902 (1996); People v. Trammel, 84 N.Y.2d 584, 588 (1994) ("To treat nonidentification results, under circumstances[5] such as occurred here, as mandating 710.30 notifications would inappropriately and needlessly extend the reach and purport of the statute.")

Here, the petitioner's claim is that his trial attorney failed to make an objection which had no clear decisional or statutory support. Under such circumstances, the attorney's failure to object is presumptively sound. Even assuming that counsel erred in not objecting to Benson's testimony, petitioner's claim still fails because there is no reasonable likelihood that he would have been acquitted but for Benson's testimony. Strickland, 466 U.S. at 688-694.

---

[5] In Trammel, police made two attempts within two days of a murder to have a witness identify the defendant as the perpetrator, but the witness was unable to identify the defendant at that time. On the day of trial, the prosecution announced their intention to call that witness. Because the witness did not make a "previous identification" of the defendant, the pretrial notice requirement of C.P.L. § 710.30(1) was not applicable. 84 N.Y.2d at 588.

Excluding Benson's testimony, the following was adduced at trial: 1) John Staples, the owner of the check, testified that he had not endorsed the check; 2) Uhle, the store manager, turned the surveillance camera on the person cashing the check and provided it to the police; 3) the payee of the check, Dana Bratcher, was in jail on the date the check was cashed; 4) a criminal investigator from the Penn Yan Police Department received the check, verified that it had been stolen, and obtained the surveillance tape from which he had photos made; 5) two parole officers who knew the petitioner identified him from the photos and video; and 6) the petitioner stipulated that the video introduced at trial was the same as the one Benson had watched. R. 485-88, 497, 523-524, 533-534, 536-537, 551-556, 558-559, 560.

Lewis has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different. The Appellate Division therefore did not render a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.

### 3. Ineffective Appellate Counsel

Petitioner's third ground for habeas relief alleges that his appellate counsel was ineffective because of his failure to raise the issue of ineffective assistance of his trial counsel. He argues:

> Appellate counsel [sic] failure to raise on
> direct appeal that trial counsel was

9

> ineffective after noting trial counsel's errors, operating under this view appellate counsel recommended that appellant file a supplemental brief. This shifting of appellate counsels responsibilities to petitioner is unattainable [sic], constituting not merely ineffectiveness [sic] assistance of appellate counsel but also a violation of petitioners due process rights.

Pet. ¶ 22(D).

The Strickland test applies to the evaluation of the effectiveness of appellate counsel as well as trial counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992); Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990). An appellate attorney is not required to advance every possible nonfrivolous argument. Petitioner cannot satisfy his burden of proving ineffectiveness of his counsel by simply showing that his appellate attorney omitted arguments which may have had possible merit. See Jones v. Barnes, 463 U.S. 745, 754 (1983). "For judges to second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every 'colorable' claim . . . would disserve the very goal of vigorous and effective advocacy. . . ." Jones, 463 U.S. at 754 (1983); accord Tsirizotakis v. LeFevre, 736 F.2d 57, 65 (2d Cir. 1984). Appellate counsel enjoys a strong presumption that his decision not to pursue a particular claim fell within the wide range of reasonable professional conduct. Holmes v. Bartlett, 810 F.Supp. 550, 561 (S.D.N.Y. 1993) (quoting Strickland, 466 U.S. at 689).

Lewis's appellate counsel raised four points on appeal: 1) the trial court erred in allowing two parole officers to identify petitioner at trial; 2) the trial court erred in allowing the store assistant manager to identify petitioner in court; 3) the verdict was against the weight of the evidence; and 4) the trial court improperly treated petitioner as a persistent felony offender. Appellate counsel advised petitioner in a letter dated October 8, 2001 (which petitioner included as an exhibit to his motion for a writ of *error coram nobis*) that if petitioner wanted to raise the issue of trial counsel's ineffectiveness, he could do so in a *pro se* brief. Counsel wrote:

> ...I gave careful consideration to the issue of ineffective assistance of counsel. Your letters were quite on point regarding some of the issues that *may* have been fruitful, had your trial attorney been more vigorous. However, in the end, issues that may have been fruitful, are not issues that the Appellate Division would likely overturn your conviction [sic; emphasis in original].

> ...While I am not going to address each of the points that you raise in your letter, I will note that I do agree that some mistakes were made by your trial counsel. However, in the end, I did not believe we had enough evidence to show that those mistakes, singly or collectively, would have changed the jury's verdict.

R. 779. Thus, the record reflects that appellate counsel made a strategic choice not to raise the issue of ineffective assistance of trial counsel, and made that choice as the result of the

exercise of reasonable professional judgment. Strickland requires no more. U.S. v. Cronic, 466 U.S. 648, 658 (1984).

"[W]hen a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." Clark v. Stinson, 214 F.3d 315, 328 (2d Cir. 2000). Unless appellate counsel failed to raise issues which were clearly stronger than those he did raise, the presumption that appellate counsel was effective is not overcome. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quotation marks and citation omitted). Here, the issues appellate counsel declined to raise (among them ineffective assistance of trial counsel) were no stronger than those appellate counsel chose to pursue. Therefore, this is "not a situation where counsel overlooked a 'sure winner' and focused only on clearly losing arguments." Clark, 214 F.3d at 328; see also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

Even had appellate counsel raised the issue of ineffective assistance of trial counsel, the outcome of petitioner's appeal would have been no different. Petitioner effectively raised the issue himself in his *pro se* brief. R.719-723. However, on direct appeal, the Fourth Department specifically held that his claim of ineffective assistance of trial counsel had no merit. People v. Lewis, 292 A.D.2d 814, 815 (4th Dept. 2002). The Appellate Division also denied Lewis's application for *writ of error coram*

*nobis* on the merits. People v. Lewis, 306 A.D.2d 957 (4th Dept.), lv. denied 100 N.Y.2d 622 (2003).

Because the claim that trial counsel was ineffective is without merit, this Court cannot conclude that the state court's denial of Lewis's *writ of error coram nobis* motion was an unreasonable application of Strickland. Petitioner's third claim is therefore denied.

### 4. Sufficiency of the Evidence

Lewis next claims that the prosecution "failed to prove that the defendant stole the check, how it came into his possession, nor [sic] any claim that the endorsement was in defendant's handwriting which is essential parts [sic] of the elements of the charge." Pet. ¶ 22(D). A petitioner who challenges the sufficiency of the evidence to support his conviction bears a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir.), cert. denied, 514 U.S. 1136 (1995). A conviction will be found to be supported by sufficient evidence if, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).

Drawing all inferences in favor of the prosecution, a reasonable trier of fact could conclude that petitioner was the same person appearing in the video, that he presented checks for

cashing, and that he knew the checks were forged. As noted in the decision of the Appellate Division, Fourth Department affirming his conviction, Lewis's face appeared on the store surveillance videotape, he had cashed a stolen check made payable to a person who was then incarcerated, and the owner of the check testified that the signature on the check was a forgery. People v. Lewis, 292 A.D.2d 814 (4th Dept. 2002)

Lewis's argument with respect to the elements of the charge of Criminal Possession of a Forged Instrument in the Second Degree is based on a misconstruction of the statute. Penal Law § 170.25 reads, "A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possess any forged instrument of a kind specified in section 170.10." The statute neither explicitly nor implicitly requires proof that the petitioner stole the check, nor does it require proof that petitioner himself forged it.

With respect to petitioner's claim that the prosecution did not prove how the check came into his possession, New York state courts acknowledge that the question of how a defendant came into possession of a forged instrument is informative, but not dispositive of the issue of knowledge. See, e.g. People v. Johnson, 65 N.Y.2d 556 (1985)(circumstances surrounding the defendant's possession of a forged instrument are relevant to the issue of whether defendant knew the instrument was forged).

Regardless of whether New York case law supports or refutes Lewis's argument, this Court cannot determine whether something is adequate proof under state law. The manner in which a state defines a crime, and what proof the state requires of a crime, are questions purely of state law. See Jackson v. Bennett, 2002 WL 1770781 at *7 (S.D.N.Y. 2002). Accordingly, there is no constitutional basis to challenge the Appellate Division's determination that the evidence was legally sufficient to support the conviction. See People v. Lewis, 292 A.D.2d 814 (4th Dept. 2002). This Court, therefore, denies Petitioner's habeas claim as to the sufficiency of the evidence supporting his conviction.

### 5. Illegal Sentence under Apprendi v. New Jersey

The petitioner's final claim is that he was illegally sentenced as a persistent felony offender in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).[6] Pet. at Attach. 8A (Dkt. #14). Under New York's persistent felony offender statute, a state sentencing judge may impose a higher sentence: (1) upon a finding that the defendant is a "persistent felony offender"; and (2) when the judge "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y. Penal Law § 70.10[2]. A finding that a defendant is a persistent felony offender may be

---

[6] Other than the fact of a prior conviction, any fact that increases penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond reasonable doubt. Apprendi, 530 U.S.at, 490.

made only after a hearing on the matter, and the people must prove beyond a reasonable doubt, by evidence admissible pursuant to the rules applicable to the issue of guilt at the defendant's trial.[7] N.Y. Criminal Procedure Law § 400.20(5).  However, a finding that the nature and circumstances of the crime, along with the history and character of the defendant, warrant extended incarceration and life-time supervision, may be based on any relevant evidence, regardless of its admissibility, and need only be established by a preponderance of the evidence.  Id.

Lewis contends that the determination of "history and character" and "nature and circumstances" by the judge without a jury trial constitutes impermissible judicial fact-finding under Apprendi.  On August 13, 2004, this Court stayed Lewis's petition until Lewis's third § 440 motion was adjudicated in the state court.  In that motion, dated February 9, 2004, petitioner raised the Apprendi claim, arguing that the New York statutes authorizing enhanced sentences for persistent felony offenders were unconstitutional because the determination is made by a judge, not a jury, and is based on sufficient evidence satisfying a preponderance standard.  The state court rejected this argument, relying on New York Court of Appeals decision in People v. Rosen, 96 N.Y.2d 329, 335 (2001) which held that under the statutory framework for enhancing sentences, prior felony convictions are the

---

[7] A persistent felony offender is a person other than a persistent *violent* felony offender who has been convicted of a felony after having been previously convicted of two or more felonies.  N.Y. Penal Law § 70.10[1](a).

sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender. With respect to subdivision (2) of C.P.L. § 70.10, the Rosen court reasoned that "the sentencing court is . . . only fulfilling its traditional role – giving due consideration to agreed-upon factors – in determining an appropriate sentence within the permissible statutory range." 96 N.Y.2d at 335.

In the habeas context, the Second Circuit held in Brown v. Greiner, 409 F.3d 523 (2d Cir. 2005) that it was reasonable to conclude that the fact-finding necessary to the imposition of an enhanced persistent felony offender sentence is excluded from the Apprendi rule. Brown, 409 F.3d at 535. The Brown court further reasoned, "[t]he second determination to be made under New York's persistent felony offender statute is of a very different sort. It is a vague, amorphous assessment of whether, in the court's opinion, extended incarceration and life-time supervision of the defendant will best serve the public interest." 409 F.3d at 534. The ruling in Brown v. Greiner was followed by a decision of a second panel of the Second Circuit in Brown v. Miller, 451 F.3d 54, 59 (2d Cir. 2006), which concluded that the state court did not unreasonably apply Ring v. Arizona in sentencing a defendant pursuant to § 70.10. In Brown v. Miller, the court held, "[b]oth Ring and Apprendi involved statutes that required judges to find specified facts (*i.e.*, judicial factfinding of an element of the crime) in order to impose an enhanced sentence, not the kind of

'amorphous' determination required by New York's statute (*i.e.*, a determination of the appropriateness of enhanced sentencing)." 451 F.3d at 59.

Here, the petitioner does not controvert the existence or constitutionality of his five predicate felony convictions, which were used to determine his status as a persistent felony offender at the hearing held on June 1, 1999. R. 660-669. The sentencing court determined that Lewis had an extensive criminal history, a "continuous disregard for the personal property of others" and that the court had "good reason to believe that he could not live in the community without engaging in further criminal activity." R. 692. The court's conclusion was a proper determination of the appropriateness of enhanced sentencing under the statute as explained by the Second Circuit. Accordingly, this Court finds that Lewis's enhanced sentence under the persistent felony offender statute was neither contrary to, nor an unreasonable application of Apprendi or Ring.[8] The petitioner's final claim is, therefore, dismissed.

**IV. Conclusion**

For the reasons stated above, Lewis's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the

---

[8] The petitioner's conviction became final in September, 2002. As such, the relevant decisions for purposes of deciding whether Lewis's sentence violated clearly established Supreme Court precedent are Apprendi and Ring v. Arizona, 536 U.S. 584 (2002) (The Sixth Amendment right to a jury trial precludes a procedure whereby a sentencing judge, sitting without a jury, finds an aggravating circumstance necessary for imposition of the death penalty).

petition is dismissed.  Because the petitioner has failed to make a  substantial showing of a denial of a constitutional right,  28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability.  See, e.g. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/ Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     August 7, 2009
           Rochester, New York